**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 6, 2026**

# In the Court of Appeals of Georgia

A25A2168. UNIVERSITY HEALTH SERVS., INC. d/b/a PIEDMONT AUGUSTA v. GEORGIA DEPT. OF COMMUNITY HEALTH et al.

GOBEIL, Judge.

University Health Services d/b/a Piedmont Augusta ("UHS") appeals from the superior court's order affirming the decision of the Commissioner of the Georgia Department of Community Health ("DCH") that denied UHS's application for a Certificate of Need ("CON") to build a freestanding emergency department in Augusta. Appellees AU Medical Center ("AUMC"), Doctor's Hospital of Augusta, LLC ("Doctors"), and DCH contest UHS's appeal. For the reasons set forth below, we affirm the superior court's order.

The record in this case shows that UHS, Doctors, and AUMC all operate hospitals within the Augusta area that include emergency departments. Under Georgia law, parties seeking to open new healthcare facilities must apply for a CON. OCGA § 31-6-40(a)(1). As set forth in OCGA § 31-6-1, the statutes are designed to ensure access to healthcare services for all Georgians and that healthcare facilities are developed in an orderly and economical manner in the public interest. DCH is the department tasked with reviewing CON applications. OCGA § 31-6-42(a).

In 2020, all three hospitals separately applied to DCH for a CON to build a freestanding emergency department ("FSED") in Columbia County. At the time these applications were filed, there were zero emergency department beds in Columbia County. Doctors applied first (January 21, 2020); UHS was second (March 4, 2020); and AUMC was third (March 20, 2020). UHS proposed to locate its FSED across the street from Doctors's proposed location. DCH issued initial approval to all three CON applications described above: Doctors on June 1, 2020; UHS on July 21, 2020; and AUMC shortly thereafter.

Doctors and AUMC filed objections to UHS's CON application, and the cases went before the CON Appeal Panel. After a multi-day hearing in October and

2

November 2023, the hearing officer of the CON Appeal Panel issued an order (the "Appeal Panel Order") reversing UHS's initial approval on June 10, 2024. The Appeal Panel Order contained extensive findings of fact and noted that much of the factual basis underlying the initial approval had changed since UHS submitted its application four years prior.[1] For example, emergency department utilization within Columbia County, which had been increasing in the years before UHS's CON application, had decreased significantly since 2019. Further, the Doctors FSED CON application had been approved by final agency decision,[2] which would "serve substantially the same service area counties and patient populations" and projected emergency treatment capacity on par with that proposed by UHS in its CON application. In the meantime, AUMC also had been approved to build a hospital in the same service area, which would include another 18-room emergency department in the same population area.

---

[1] In its review, "[t]he hearing officer may consider the latest data available, including updates of studies previously submitted, in deciding whether an application is consistent with the applicable considerations or rules." OCGA § 31-6-44(g).

[2] This Court affirmed the issuance of the CON on appeal. See *AU Med. Ctr., v. Dep't of Cmty. Health,* 366 Ga. App. 94, (880 SE2d 275) (2022).

On appeal from the Appeal Panel Order, the DCH Commissioner upheld the hearing officer's decision (the "Final DCH Order"). Despite finding "compelling legal arguments" made by UHS, the Commissioner cited *Vantage Cancer Ctrs. of Ga.. Dep't of Cmty. Health*, 318 Ga. 361, 367 (898 SE2d 462) (2024), for the proposition that he must accept the hearing officer's findings of fact unless he could first determine that those findings were not based on any competent substantial evidence. Considering himself constrained by the holding in *Vantage* and finding the hearing officer's decision to be supported by competent substantial evidence, the Commissioner could not change the conclusions of law (and the ultimate result) without creating what he called a "nonsensical final order."

UHS appealed to the superior court, which affirmed the Commissioner's order (the "Superior Court Order"). The superior court found that the DCH's findings were supported by substantial evidence. The court also found that the Commissioner's order properly applied the criteria from the CON statutes. We granted UHS's application for discretionary review, and this appeal followed. A25D0295. (Apr. 2, 2025). On appeal, UHS lists nineteen enumerations of error.[3]

---

[3] Specifically, UHS asserts that DCH erred by:
1. Applying diametrically opposed legal frameworks for review of different

CON applications for hospitals to develop FSEDs that are not based on statutory or regulatory text, thereby creating ambiguity, unpredictability, inefficiencies, and the appearance of favoritism and lack of fairness.

2. Misconstruing and misapplying the statutory General Need Consideration to require UHS to document "lack of ability to access a service due to factors such as overcrowding or backlogs in service" and "growing use of a particular type of service" when that test nowhere appears in the statute or implementing regulations and has been flatly rejected as "flawed" and "impermissible" by the Department in prior matters.

3. Applying an unwritten numeric need "guideline" of 1,500 emergency department ("ED") visits per bed to measure "need", "capacity" and "utilization" under six statutory General Review Considerations despite correctly rejecting the use of such guideline in other cases as "fatally flawed" and an unauthorized effort to impose an unwritten, service-specific need methodology.

4. Reviewing and denying UHS' project under a new, unwritten financial accessibility comparative test as opposed to the seven specified, written factors that are contained in the Department's Financial Accessibility Consideration.

5. Treating the separate statutory General Review Considerations as if they are inextricably intertwined and dependent on the lack of any "duplication of services", which is not the standard for review articulated in the CON statute or Department's implementing regulations. C.6, C.8)

6. Ignoring all of the factors cited by the Department in its original legal conclusions that UHS' project complies with all applicable CON General Review Considerations, which presents legal questions regarding the Department's misapplication of the CON review considerations, not factual disputes.

7. Misinterpreting this Court's prior decisions in *Houston I* and *Houston II* as well as the Georgia Supreme Court's *Vantage* decision to preclude the Department from following its precedent and reversing the Hearing Officer's conclusions of law.

UHS asserts the superior court erred by:

8. Permitting the Department to depart from its precedent without explanation because the full administrative records in the Department's other cases were not before the reviewing court, which is contrary to this Court's decisions regarding

5

administrative precedent as well as the well-established principle that an agency must clearly set forth the grounds for its departure from prior norms so that a reviewing court may judge the consistency of that action with the agency's mandate.

9. Summarily concluding that the Department need not follow its own administrative precedent when facing legal questions already decided several times – including days before the final order in this case – because such precedent is horizontal, not binding "vertical" stare decisis.

10. Summarily concluding that the Department can issue two decisions applying irreconcilable interpretations of the requirements of the statutory and regulatory CON review considerations just days apart without explanation because, in hindsight, both decisions later were challenged on petitions for judicial review.

11. Holding that UHS failed to preserve its challenge to the Appeal Panel's (erroneous) conclusory statements that the record contains "no evidence" of "lack of access" to emergency services where UHS' objections to the Commissioner pointed to evidence to the contrary with supporting record citations, including undisputed testimony that approximately 9,000 patients annually present to UHS' urgent care clinics with emergency conditions requiring ambulance transports to hospitals.

12. Misapplying the applicable standard of review to such conclusory statements, conflating the "substantial evidence" standard with the "any evidence" standard, notwithstanding express statutory language that the substantial evidence standard is a higher standard.

13. Misconstruing the "positive relationship" review consideration "to encompass any potential adverse impact on existing providers" even where an opponent makes no effort to quantify impact.

14. Erroneously conflating the concepts of "positive relationship" and "adverse impact" in the CON statute, which ignores different terminology used in different subsections of Code Section 31-6-42.

15. Repeatedly mischaracterizing UHS' legal challenges as factual challenges requiring a reweighing of evidence.

16. Misrepresenting the contents of UHS' CON application (including UHS' project justification), the underlying administrative decisions, and UHS' objections during the administrative process.

6

For simplicity, we will address these enumerations within four categories, recognizing that some of the individual arguments overlap: (1) the DCH hearing officer applied different legal standards in the Appeal Panel Order than in other appeal orders, and the superior court erred in not reversing for this reason ("Department Precedent"); (2) the DCH hearing officer and the superior court misapplied the statutory CON guidelines in this case ("CON Statutory Guidelines"); (3) the DCH Commissioner misinterpreted his authority in affirming the Appeal Panel Order ("Commissioner Review"); and (4) the superior court erred in its review of the Final DCH Order ("Other Superior Court Error").

---

17. Overstepping the superior court's limited appellate authority by making new, disputed factual findings that are not supported by the cite record citations in a post hac effort to bolster the Department's unprecedented and erroneous legal conclusions.

18. Overstepping the superior court's limited appellate authority by adopting new legal justifications for denying a CON to UHS that are not contained in the Final Order and are not grounded in any statutory or regulatory text.

19. Summarily concluding that UHS' substantial rights were "not prejudiced" without considering whether there was a reasonable probability that the alleged errors affected the outcome.

Before evaluating the individual arguments, we first consider the statutory limitations on our review of CON cases. On appeal, "our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." *Dep't of Cmty. Health v. Houston Hosps.*, 365 Ga. App. 751, 757(I) (880 SE2d 245) (2022) (quotation marks omitted). In reviewing the agency's final decision, we

> may reverse or modify the final decision only if substantial rights of the appellant have been prejudiced because the procedures followed by the department, the hearing officer, or the commissioner or the administrative findings, inferences, and conclusions contained in the final decision are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the department;
>
> (3) Made upon unlawful procedures;
>
> (4) Affected by other error of law;
>
> (5) Not supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences,

8

conclusions, or decisions, which such evidentiary standard shall be in excess of the "any evidence" standard contained in other statutory provisions; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 31-6-44.1(a). "We are generally charged with treating [DCH's] final decision with deference because agencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches[, but] importantly, we only defer to an agency's interpretation when we are unable to determine the meaning of the legal text at issue." *Houston Hosps.*, 365 Ga. App. at 757(I) (emphasis omitted).

## 1. Final DCH Order

Based on our established review procedures, we focus on the final decision of the agency, contained in the Final DCH Order (issued by the Commissioner), and consider UHS's arguments concerning Commissioner Review. The Commissioner affirmed the

Appeal Panel Order under OCGA § 31-6-44 (2019), as it existed at the time UHS filed its appeal.[4]

Under the statute, the Commissioner may reject or modify a conclusion of law by the hearing officer of the Appeal Panel if it "state[s] with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and [ ] make[s] a finding that its substituted conclusion of law or interpretation of administrative rule is *as or more reasonable* than that which was rejected or modified." OCGA § 31-6-44(k)(1) (2019) (emphasis supplied). The statute further limits the department's ability to reject or modify a hearing officer's findings of fact as follows:

> Rejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact. The commissioner may not reject or modify the findings of fact unless the commissioner first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon any competent substantial evidence or that the proceedings on which the findings were based did not comply with the essential requirements of law.

---

[4] Ga. L. 2024, Act 384 at 45, § 5 amended OCGA § 31-6-44, effective July 1, 2024, to eliminate Commissioner Review of DCH appeal panel decisions. The Commissioner determined that he retained jurisdiction to decide UHS's appeal, which predated the effective date of the statutory change (and the parties do not dispute this ruling on appeal).

Id. In interpreting this statute, the Georgia Supreme Court has held that the Commissioner's authority to evaluate or weigh the evidence is limited. *Vantage*, 318 Ga. at 372–73(2)(b). When a CON application is contested, the statutory scheme explicitly states that, "it is the hearing officer, rather than the agency, that is tasked with evaluating the evidence." Id. at 372(2)(b). It is the hearing officer who conducts and observes the evidentiary hearing, evaluates the evidence, and makes findings of facts and conclusions of law. Id. Thus, under the statute, the Commissioner may not "reweigh the evidence, judge the credibility of witnesses, or substitute his judgment on factual issues for that of the hearing officer based on the Commissioner's expertise." Id. at 373(2)(b).

Here, the Commissioner found that the Appeal Panel Order was supported by competent substantial evidence.[5] Accordingly, under the statute and the decisions of the Supreme Court of Georgia, the Commissioner correctly determined that he was not

---

[5] The Commissioner treated the hearing officer's findings as essentially uncontested. UHS did contest one specific finding of fact (that was mentioned in two places in the Appeal Panel Order) in its appeal to the Commissioner (which it continues to contest on appeal). That finding — that *no* evidence was presented to demonstrate a particular argument made by UHS in support of its application — was not material in the overall conclusions made by either the hearing officer or the Commissioner.

authorized to reject or modify any of the findings of fact of the hearing officer. And, given the specific findings by the hearing officer in this case, the Commissioner discerned no need to modify the conclusions of law that followed. Stated another way, the Commissioner found no conclusions of law that would be "as" or "more reasonable" than those found by the hearing officer. We see no reversible error in this decision. As explained below, we agree with the Commissioner that the Appeal Panel Order was supported by competent substantial evidence. UHS further contends that the Commissioner improperly discounted its argument that the Appeal Panel Order should be reversed because the hearing officer applied different legal standards to UHS than to previous CON applicants. However, for reasons explained below, we do not find this argument to be compelling and see no error in the Commissioner's rejection of it.

## 2. Appeal Panel Order

We next consider whether the Appeal Panel Order was supported by substantial evidence and whether its conclusions were made within DCH's statutory authority. Much of UHS's brief on appeal is devoted to the Department Precedent argument that the hearing officer in this case applied "diametrically opposed legal frameworks for

review of different CON applications for hospitals to develop FSEDs" that create ambiguity and unpredictability in the CON system. UHS points to another appeal panel order — issued days before UHS's Appeal Panel Order — which affirmed DCH's approval of two Memorial Health University Medical Center's CON applications to build FSEDs in the Savannah area (the "Memorial Decision"). UHS argues that DCH applied a different, and more favorable, legal framework to Memorial than to UHS in a manner that is arbitrary and capricious, and violates its substantial rights. UHS also contends (in its CON Statutory Guidelines arguments) that the hearing officer misapplied eight of the factors set forth in the CON statutes, repeatedly asserting that the hearing officer imposed "more onerous requirements on UHS than other FSED applicants." As explained below, UHS has not shown reversible error by the hearing officer.

Under the statutory framework, after a party submits a CON application, DCH reviews all information submitted by the applicant and the responses and then issues an initial so-called desk decision. See OCGA § 31-6-43(i); *Houston Hosps.*, 365 Ga. App. at 754(I). If a party opposes the desk decision, the party may request an

administrative appeal to the CON Appeal Panel, which, through a designated hearing officer, conducts a full evidentiary hearing. OCGA § 31-6-44(d),(e), (f).

> The issue for the decision by the hearing officer shall be whether, and the hearing officer shall order the issuance of a certificate of need if, in the hearing officer's judgment, the application is consistent with the considerations as set forth in Code Section 31-6-42 and the department's rules, as the hearing officer deems such considerations and rules applicable to the review of the project.

OCGA § 31-6-44(f). Notably, the hearing officer's review of the desk decision is de novo. Id. The hearing officer may consider all relevant evidence, including evidence that was not presented before the department's desk decision. OCGA § 31-6-44(g).

OCGA § 31-6-42 contains a list of 17 factors for the appeal panel to consider depending on the nature of the proposed project. "The department shall issue a certificate of need to each applicant whose application is consistent" with the factors deemed applicable to the proposed project. OCGA § 31-6-42(a). Thus, the failure of any one of the applicable factors is fatal to an application.

In this case, the Appeal Panel Order concluded that UHS failed to satisfy eight of the statutory criteria: (1) general need; (2) existing alternatives; (3) financial feasibility; (4) financial accessibility; (5) positive relationship to healthcare delivery

system; (6) efficient utilization; (7) fosters improvement or innovations; and (8) consistency with state health plan. OCGA § 31-6-42(a)(1)-(4),(7)-(9),(13).

(a) UHS's arguments concerning Department Precedent and the CON Statutory Guidelines fail for multiple reasons. First, the hearing officer did not actually apply any new or contradictory framework to UHS's application that rendered his decision arbitrary or capricious. To illustrate (and because we only need to confirm the hearing officer's findings as to UHS's failure to satisfy one statutory criteria), we turn to the general need requirement. The statute states that a CON application may be granted if: "[t]he population residing in the area served, or to be served, by the new institutional health service has a need for such services." OCGA § 31-6-42(a)(2). The Appeal Panel Order found that UHS's proposed project failed to satisfy this criteria for several reasons based on the data presented by UHS in its application and additional evidence produced at the evidentiary hearing. For example, the Appeal Panel Order noted that "patients in the service area appear to be accessing emergency services readily," "the existing providers in the service area are meeting the need for emergency services," and "utilization of [emergency department] services at [UHS] has precipitously declined." Moreover, the already-approved FSED project from

Doctors would be serving the same area – thereby increasing emergency department access for the same population UHS proposed to cover and eliminating the need for additional emergency department services.

UHS refers to other CON applications for FSED projects where DCH has used population growth and historical utilization of emergency services as factors to justify need – claiming that DCH "has consistently taken the position that, as the population in an area increases, so does the need for health care services." According to UHS, the Appeal Panel Order in this case did not use that framework, instead applying new requirements to UHS's application that had never before been applied to a FSED application, such as a "lack of access" requirement and numeric calculations for the number of emergency department visits per bed at existing hospitals. These arguments illustrate UHS's overall assertion that the Appeal Panel Order is defective for applying a new and arbitrary and capricious legal framework. However, these arguments miss the mark.

The Appeal Panel Order does not impose any such "lack of access" requirement onto UHS's CON application. Instead, the order includes "lack of ability to access a service" as part of its explanation of "use patterns," which UHS notes is part of the

consistent framework used by DCH in evaluating these applications (although UHS uses the words "historical utilization" to describe the same factor). And the Appeal Panel Order considers the general need in the manner described by UHS: the hearing officer considered the population growth of the area (growing, but slower than the State overall) and the utilization of the type of service (declining overall, and even more dramatically for UHS than other hospitals in the area). The Appeal Panel Order does not require UHS to show a lack of access to services, but rather it cites the apparent ready accessibility of those services as evidence that existing providers are meeting the existing need. Indeed, the regulations guiding the hearing officer's consideration, Ga. Comp. R. & Regs. r. 111-2-2-.09(1)(b)(5), state that DCH may use a variety of data sources to evaluate need and do not limit the data sources available to the department to those contained in the regulation. Even UHS argued – as part of its need demonstration in its CON application – that the proposed project would improve access to emergency services, thus making the access of such services relevant to the need discussion of this particular project.

UHS also fails to show that the Appeal Panel Order imposed new and arbitrary mathematical requirements to demonstrate need. As all of the parties here agree, in a

17

project such as an FSED, "there are no service-specific rules for the application," and the applicant "has wide flexibility to devise a general need argument to be considered by [DCH]." In its CON application, UHS relied on the current emergency-department utilization in Columbia County as compared to other counties, as well as forecasts of future utilization, to demonstrate the need for its FSED. UHS complains about the Appeal Panel Order's references to "lack of access," "numerical need," "1,500 visit per ED bed guideline" and "visit volume utilization standard." However, these references simply reflect the hearing officer's required consideration (under the general guideline) of population size and utilization of the proposed service to evaluate need for the proposed project. That the hearing officer calculated the visits-per-bed that would result if the UHS project was approved does not equate to imposing a new numerical requirement.[6] Indeed, although the Appeal Panel Order references a "1,500 visit per [emergency department] bed guideline," and calculates that UHS falls short

---

[6] To illustrate the point, we point to the Appeal Panel Order's calculation of the visits per ED bed and how it used this data point in its conclusions. At the evidentiary hearing, UHS argued that the need for Columbia County is equal to the need of counties with similar populations. The hearing officer made calculations and determined that the emergency-department utilization for Columbia County was actually significantly lower than those comparable counties, and thus determined that the need for Columbia County is also lower based on factors other than mere population size.

of it, it also recognizes that "there is no set formula for determining need in this context." Rather, the hearing officer was making findings of fact (as he is required to do) to support his conclusion that UHS did not demonstrate a general need for its proposed project. UHS argued in its application that the hospital system in Columbia County would not be able to meet the need of the growing population without additional emergency room services, given the trends as they existed in 2020. But, the hearing officer found that argument no longer persuasive given the trends as they existed in 2024. That UHS disagrees with the conclusion does not mean that we are authorized to overturn it.

(b) Further, the fact that DCH previously used different language in other need evaluations and appeal panel orders does not by itself constitute a violation of any of UHS's rights under the statute. A hearing officer is given the authority to consider each project on its own merits, under the unique, fact-intensive circumstances presented in each application. OCGA § 31-6-44(f). Additionally, as described above, the statutory criteria for general need focuses on the area to be served by the proposed project, rendering findings from other service areas unhelpful. Finally, as an appellate court, we are limited to the record before us. It is not practical - nor perhaps even

feasible - to compare multiple, unrelated CON applications and orders, especially when the evidence underlying the orders from such other cases is not before us. Accordingly, given the record before us, we are unable to discern any actionable discrepancies between the legal standards applied to the UHS decision and to the Memorial Decision, as opposed to differences in data points and language referenced within those decisions.

### 3. Other Superior Court Error

To the extent UHS argues that the Superior Court Order contains error, such arguments are either not within the scope of our review under the statute or have already been rejected for the reasons explained above. OCGA § 31-6-44.1(a); *Houston Hosps.*, 365 Ga. App. at 757(I).

We thus affirm the superior court's order in this case.

*Judgment affirmed. Rickman, P. J., and Davis, J., concur.*